York Bank *v.* Appleton.

*Mem.* SHEPLEY J. having been of counsel in this case, did not take part in the hearing or determination.

## YORK BANK *vs.* JOHN W. APPLETON.

The attorney of record, in a suit against the maker of a note, has no authority from his employment as attorney, to execute a valid release to an indorser of the same note to render him a competent witness.

The indorsee of a promissory note has the right to claim and to hold as much collateral security as he can obtain, if he does nothing under color of this right to injure other creditors.

ASSUMPSIT on a promissory note, dated *January* 18, 1836, for the sum of $3900, payable to *Moses Emery,* or order, at said Bank, in sixty days and grace, and by him indorsed to the Bank on the day of its date, in renewal of a former note by the same parties. The notes were justly due from *Appleton* to *Emery,* and were discounted for the latter by the Bank.

The defence set up was, that the note in suit was paid to the Bank by substituting therefor another note for the same sum, dated *October* 26, 1836, signed by the defendant, indorsed by *Emery,* and guarantied by *William Cutter;* or by a note to the Bank for the same amount, dated *Oct.* 27, 1836, signed by said *Emery* and *Phinehas Pratt.*

The writ in this action was in the handwriting of said *Emery* and indorsed by *A. G. Thornton* who then kept the office occupied by said *Emery* while in practice, and was dated *June 4,* 1836. *Emery,* in *September* following, went into *Portland* and attended to the examination of a person summoned as trustee in that suit, under a written authority from the Bank. It did not appear that *Emery* had ever acted as attorney for the Bank, except in those instances. *J. & E. Shepley* were the general attorneys of the Bank, and entered this action, and they, or one of them, were the only attorneys of record, but were both out of town when the writ was made. *William Cutter,* called by the defendant, testified, that he purchased the land of *Appleton,* which was the consideration of the note in suit on a sale by *Emery* to *Appleton,* and agreed to assume and take up the note in suit, and supposing the Bank would not give up the names then upon the note, one was made to renew it signed by *Appleton,* indorsed by *Emery,* and

guarantied by him, dated *Oct.* 26, 1836, for $3900; that *Emery* agreed to take the note to the Bank, and endeavor to have it taken as a renewal of the note in suit; but that "it was suggested by said *Emery* that the bank might not be willing to give up the note in suit;" and that he sent similar notes to *Emery* for renewal, and supposed the Bank had taken them.   *Henry S. Thatcher*, cashier of the Bank, was called by the defendant, and on notice produced the books of the Bank, and testified, that on the 27th of *October*, 1836, *Moses Emery, Esq.* paid the interest on the note in suit at the Bank, and at that time, *Emery* having previously been called upon by the Bank for additional security, left at the Bank as collateral security for the note in suit a note for the same amount, signed by *P. Pratt* and himself; that he then entered the same on his journal, and against and under it entered the note in suit with the words, "paid by the above note;" that the *Pratt* note had been several times renewed, and had been reduced in amount; that when the *Pratt* note was first left, that *Emery* offered to the President of the Bank the *Cutter* note of *Oct.* 26, 1836, for discount to take up the note in suit, and that the President refused to take the note; that *Emery* requested him, the cashier, without the knowledge of the President, to take the *Cutter* note and keep it in the Bank; that he did take that and afterwards another similar one, but not as notes discounted or as collateral, and at *Emery's* disposal, and filed them away with the *Pratt* note, and afterwards entered it by mistake as collateral to the *Pratt* note, but that it was done without the direction of any officer of the Bank; that the books were kept by him without any direction from the officers of the Bank, and he did not understand that one note was actually paid by the other, but that the amount of both the *Pratt* note and the note in suit should not appear to be due to the Bank on the books.   He testified, that the note in suit had never been paid, or intended by the Bank to be paid, to his knowledge at any time; and that he was not a stockholder in the Bank, nor was said *Emery*.   The testimony of the President of the Bank, by deposition taken by consent, was introduced by the *defendant*, but did not in substance, as to facts within his knowledge, vary from that of the cashier.   In relation to the *Pratt* note he said, "our object in taking that note was in order that we might have something that

would be attended to, not relinquishing any other security that we had before."

*Moses Emery,* the indorser of the note in suit, was called as a witness by the plaintiffs and was objected to by the defendant in the suit, and was thereupon released by the plaintiffs' attorney of record in the suit. The objection was still renewed, because the attorney in the action, without express authority from the Bank, had no power to release the interest of the witness as indorser; but the objection was overruled. The witness gave a history of the transactions between the defendant, *Cutter* and himself, and said, that the note in suit ought long before it fell due to have been paid in cash by the defendant, but that he consented to try to get the Bank to take the *Cutter* note for this note which had already been put in suit, but expressed doubts whether it could be done; that he carried it to the Bank where he saw the President, and endeavored to make the arrangement, but he utterly refused; that he then proposed to have the note left as collateral security to the other, but that the President of the Bank declined, and would not take the note; that according to an arrangement then made he procured the *Pratt* note as collateral security for the note in suit, and not in payment of it; that he was never a stockholder or agent of the Bank, and never acted for the Bank excepting in making the writ in this case and getting it served at the request of the President, in the absence of *Mr. Shepley,* the attorney of the Bank, and afterwards at the request of the Bank, going to *Portland* to examine some trustees; and that soon after the refusal of the Bank to take the *Cutter* note, the defendant was informed thereof. Before the trial, *Pratt* had made an arrangement with the Bank, whereby the note signed by *Emery* and himself had been given up to him, and *Emery* was not liable on that note, or any renewal of it. *Emery* stated, that after the refusal of the President to take the *Cutter* note, he left it with *Mr. Thacher* to be kept for him as his private paper, to which he with some reluctance consented.

" The counsel for the defendant contended, that by the transactions on the 26th of *October,* 1836, between the defendant and *Emery* and *Cutter,* the note in suit was paid to *Emery,* and that the Bank had adopted and ratified the acts of *Emery,* and requested the Judge who presided at the trial to instruct the jury as follows:

" 1. If the jury believe that *Moses Emery* was the agent of the Bank in the transaction of *Oct.* 26, 1836, and by that transaction the note in suit was paid to said *Emery*, or that it adopted his acts by receiving the note of defendant and *Cutter*, in that case the plaintiff ought not to recover.

" 2. If the jury is satisfied that the suit is nominally prosecuted by the Bank, for the benefit in fact of *Moses Emery*, any defence which the defendant could set up against a suit in the name of *Emery*, may be set up in this case.

" 3. If the jury is satisfied that by the transaction of *Oct.* 26, 1836, the note in suit was actually paid to *Moses Emery* by the defendant, and that the Bank acquiesced in the arrangement by taking the note of defendant guarantied by *William Cutter*, then the plaintiff ought not to recover.

" 4. If the jury believe the Bank had good reason to believe that the note for $3900, signed by *J. W. Appleton* and guarantied by *Cutter*, was intended by said *Appleton* to be substituted for the note in suit, and the Bank received it, intending to regard it as a valid and operative note, the note in suit thereby became invalid and in-inoperative, and the plaintiffs' right to recover in this action thereby became extinguished.

" 5. If the jury is satisfied that *Pratt & Emery's* note was on the 27th day of *October*, 1836, substituted for the note in suit by the consent of the *Bank*, and the last note was then placed in the Bank as collateral security of the former note, the defendant has the right to the same defence against the plaintiffs, which he might have against *Moses Emery*."

EMERY J. presiding at the trial, instructed the jury, that as the books of the Bank had been exhibited by the Cashier, and the Cashier had been examined critically by both parties, and his explanation as to his mode of keeping accounts .had been heard, if from the whole evidence they were satisfied, that the Bank did accept the note of the defendant and *Cutter* as a substitute for the note in suit, and in payment of it, the verdict should be for the defendant; otherwise the plaintiffs were entitled to recover. The Judge gave the instruction contained in the *third* request; and the *first* with this qualification; that the jury should be satisfied that said *Emery* was the agent of the Bank for this purpose, and that

the Bank did receive the note of the defendant and *Cutter* in payment of the note in suit, of which the jury from the whole evidence would judge. The second, fourth and fifth requests were denied.

The verdict for the plaintiffs was to be set aside, if there was error in the admission of the testimony objected to, in denying the requests for instruction, or in the instructions given.

*N. D. Appleton* argued for the defendant.

*Emery* was improperly admitted as a witness.

He was directly interested as indorser of the note in suit. *Barnes* v. *Ball,* 1 *Mass. R.* 73.

The release does not destroy the interest of the witness because it was executed without authority from the Bank. Corporations must act by their corporate seal, or by vote of the corporation, or in the manner authorized by the act of incorporation. 1 *Black. Com.* 475; *Head* v. *Prov. Ins. Co.* 2 *Cranch,* 127; *Monumoi Beach* v. *Rogers,* 1 *Mass. R.* 159; *Gray* v. *Portland Bank,* 3 *Mass. R.* 364; *New-York Slate Co.* v. *Osgood,* 11 *Mass. R.* 60; 9 *Coke,* 76. An attorney of record has no authority as such to execute a release of the interest in question. *Murray* v. *House,* 11 *Johns.* 464; *Lewis* v. *Gamage,* 1 *Pick.* 347; 8 *Johns. R.* 366; 6 *Johns. R.* 51; 6 *Cowen,* 585; 2 *Call,* 498; 2 *Hen. & M.* 268, 348; 1 *T. R.* 62; *Beardsley* v. *Root,* 11 *Johns. R.* 465; 2 *Stark. Cas.* 41; *Marshall* v. *Nazel,* 1 *Bailey's Rep.* 358; *Hart* v. *Waterhouse,* 1 *Mass. R.* 433; 7 *T. R.* 207; 2 *Caines,* 250; *Ford* v. *Clough,* 8 *Greenl.* 344; *Nelson* v. *Milford,* 7 *Pick.* 18; 1 *Blackford,* 252. But if the release is valid, it does not go far enough, as it merely releases *Mr. Emery* from all liability as indorser. He is still liable for the costs of this suit. *Emerson* v. *Newbury,* 13 *Pick.* 377.

The instructions *first requested* were definite and distinct, and such as the defendant had a right to expect should be given. By the qualification, the minds of the jury would be likely to be mislead and confused and withdrawn from the plain and distinct propositions presented to them. The qualification was erroneous. The Bank must ratify the acts of *Emery* in the whole or in no part. *Paley on Agency,* 145, 249; *Peters* v. *Ballister,* 3 *Pick.* 505.

The instruction secondly requested should have been given. It was contended before the jury that the suit was brought and prosecuted for the benefit of *Emery*. He was in fact the party in interest. *Towne* v. *Jaquith*, 6 *Mass, R.* 46 ; *Ayer* v. *Hutchins*, 4 *Mass. R.* 370 ; *Thurston* v. *McKown*, 6 *Mass. R.* 428 ; *Hemmingway* v. *Stone*, 7 *Mass. R.* 58 ; *Holland* v. *Makepeace*, 8 *Mass. R.* 418 ; *Clark* v. *Leach*, 10 *Mass. R.* 51.

He also contended, that the Judge erred in declining to give to the jury the fourth and fifth instructions requested.

*J. Shepley* for the plaintiff.

The preliminary and only real question in the case is, had the attorney of record in the suit, authority as such, to release to *Mr. Emery* any claim against him as indorser, that he might thus become a witness in a suit against the maker.

It is said that the attorney could not act for the Bank, without a written authority under the corporate seal, or a record of the vote of the corporation. The doctrine that a corporation can be bound only by instruments under seal or by vote, has long since been exploded. But here the authority of the attorney to act for the Bank in the action generally, is admitted, and the old authorities never required the acts of the attorney to be under seal. If so, he must put a seal to his joinder of the general issue. *Heard* v. *Lodge*, 20 *Pick.* 53.

When it is the bounden duty of the attorney to take that course in conducting a trial which in his opinion will best advance the interest of his client, and when he has secured the debt by attachment of the property of the maker of the note, and when he comes into court, unexpectedly finds a defence set up, and sees the indorser there who may have no ability to pay, but by whom he can prove his case if he can remove the nominal interest ; there should be very strong authority to show that the attorney must stand by, and see the interests of his client sacrificed, and the debt lost, because he has no power to discharge the right to call upon such indorser if he should not get it of him who should pay it. This question was made in *Kendall* v. *White*, 13 *Maine R.* 245, in which the counsel for the plaintiffs relied on *Adams* v. *Robinson*, 1 *Pick.* 461, but the case was decided on other points. *Fling* v. *Trafton*, 13 *Maine R.* 295, extends the power of the attorney

farther than we claim, and is decisive in principle, as it allows of the absolute discharge of a party to the suit by the attorney of record. The contract was joint, and the attorney was held by this Court to have power to strike out one party and take judgment against the other only, thereby virtually releasing the other. In *Gordon* v. *Coolidge*, 1 *Sumner*, 537, it was held, that an attorney to whom a demand was sent for collection might release an attachment of property and assent to take a dividend, on an assignment, and bind his client in thus doing. This decision is sanctioned by Chancellor *Kent*. 2 *Com.* 620, *note*. The case of *Union Bank* v. *Geary*, 5 *Peters*, 99, is precisely in point. It was there held, that the attorney of a corporation had power to discharge an indorser of a note, and for no other object than thereby to obtain judgment a little sooner. The admission of the attorney of record that a verdict should be returned against his client was held to be binding. 2 *Stark. on Ev. (Last Ed. in 2 Vols.)* 84. A confession of judgment by an attorney, acting without authority, is binding on the party, though the attorney would be subject to an action for damages. *Denton* v. *Noyes*, 6 *Johns. R.* 296 ; *Jackson* v. *Steward, ibid.* 34. The case, *Gaillard* v. *Smart*, 6 *Cowen*, 385, cited for the defendant, is in favor of the plaintiffs. There the attorney of the plaintiff agreed to become nonsuit, and afterwards attempted to retract and proceed to trial, on the ground that it could not bind his client. The Court ordered a discontinuance to be entered. The case mainly relied on for the defendant, *Murray* v. *House*, 11 *Johns. R.* 464, turns wholly on the fact, that the person acting as attorney in that instance was not the attorney of record. It was held, that under such circumstances he could not discharge the interest which a witness had in the suit, implying that the attorney of record had the power. He had not seen the case cited from *Bailey*, but contended, that all the others cited had no bearing on the question.

But the testimony of *Mr. Emery* was wholly immaterial. *Cutter*, one of the defendant's witnesses, had no communication with the *Bank* or its officers. The other two called by the defendant deny that the note was ever paid, and they are the persons, who knew best whether it was or not. If *Emery's* testimony is thrown out of the case, it stands precisely as it does with it in.

He contended, that none of the instructions requested should have been given. All the law pertinent to the case had already been fully stated to the jury; and a party has no right to require the Judge to split hairs with him, or to give laws to the jury pertinent only to facts not in the case. He commented upon each one of them, and briefly contended, that they either were given in substance, or were properly withheld, independent of the general instructions.

The opinion of the Court was by

WESTON C. J. — *Moses Emery*, a witness, introduced by the plaintiffs, was undoubtedly interested in the event of the suit. He was liable as indorser of the note; and his interest is conceded by the plaintiffs' counsel. Being objected to, he was not legally admissible, unless his interest was removed. And in our opinion this has not been done. It does not appear, that *Mr. Shepley*, the plaintiffs' attorney in this suit, had any other authority from them, except what resulted from his being employed by them in this cause. That could not give him the right to release any other collateral security. It would have the effect to put the rights and interests of clients unnecessarily into the power of their attorneys. It cannot be regarded as an authority incident to their employment or retainer. No case directly in support of it has been cited, but several have been, which bear against it.

It may be questionable however, whether the plaintiffs' case required the testimony of the witness, *Emery*, and whether there is not enough to sustain the verdict without it. The note adduced at the trial, being evidence of the assumpsit declared on, the burthen of proof is upon the defendant to show it paid or discharged. Actual payment in money is not pretended; but it is insisted that the note has been paid, either by the note signed by *Pratt* and *Emery*, or by that of which *Cutter* became the guarantor. If either of these notes was received by the plaintiffs in payment, it would have that effect, and not otherwise. There is no testimony to establish this fact, except what results from the books of the bank, and the actual receipt of the notes. The state of the books was fully explained by the cashier, and the jury have passed upon that part of the testimony. Both the cashier and *King*, the Pres-

ident of the Bank, testify, that this note has not been paid, and that the other notes were not received in payment, but as additional security. The implication, arising from the receipt of these notes, is thus done away by this positive testimony. No witness testifies, that either was received by the Bank in payment, whatever might have been the understanding between *Emery* and *Cutter*, or between *Emery* and the defendant. This fact, being directly disproved by the positive testimony of two witnesses, who were the organs of the Bank, and in a condition to know, and who are not contradicted, we have hesitated whether the verdict ought to be set aside, because a third witness to the same effect may have been incompetent. The plaintiffs had a right to claim and to hold, as much collateral security as they could get, provided they did nothing, under color of this right, to injure other creditors.

The second instruction requested, is virtually involved in others, which were given. If the Bank held the note unpaid and uncancelled, which the jury must be understood to have found, under the first and third instruction requested, they could not be mere nominal holders, which is the hypothesis assumed in the second. If the plaintiffs took the *Cutter* note as collateral security, they might hold it as operative and binding, until the principal debt was paid, without thereby discharging the note they held for that debt. Both are binding as security, until the debt secured is paid; and the fourth requested instruction was therefore properly withheld. If the plaintiffs have neither made *Emery* their agent, nor adopted his acts, which the jury have negatived, any defence which might exist against *Emery*, could not conclude the Bank, so that there was no legal foundation for the fifth requested instruction.

Upon consideration, however, we cannot take it upon ourselves to say, in a question of fact submitted to the jury, that they could and ought to come to the same result, independent of the objectionable testimony. It covered the whole ground of inquiry, was given at much length, and was material in its bearing. As the interest of the witness was not legally removed, the verdict must be set aside, and a new trial granted.